UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 19-11793-RGS

YUDELKA TAVERAS

v.

NORTHEAST FOODS, LLC, d/b/a BURGER KING

MEMORANDUM AND ORDER ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

March 4, 2021

STEARNS, D.J.

Yudelka Taveras brings this action against her former employer, Northeast Foods, LLC, alleging discrimination based on race (Count I) and national origin (Count II), in violation of Mass. Gen. Laws ch. 151B, § 4. Northeast Foods moves for summary judgment on both counts. For the following reasons, the court will deny the motion.

## BACKGROUND

The facts, viewed in the light most favorable to Taveras as the nonmoving party, are as follows.

Taveras, a Hispanic woman, emigrated to the United States from the Dominican Republic in 2002. In February of 2004, she began working at a Burger King franchise in Massachusetts. Although she joined Burger King

as an entry level employee, the franchise promoted her to shift manager in 2005 and to General Manager in 2007.[1]

In 2012, Northeast Foods, a Texas-based Burger King franchise, purchased several Burger King franchises in Massachusetts and New Hampshire, including the franchise where Taveras worked. Northeast Foods continued Taveras in her position as a General Manager after the acquisition and, in September of 2016, on the recommendation of her then-supervisor, Ketty Dalence, promoted Taveras to District Manager. As a District Manager, Taveras oversaw six stores in New Hampshire and one store in Massachusetts.[2]

In September of 2017, Northeast Foods replaced Dalence (who had been promoted) with Gregory Pollock, a white Caucasian male. Pollock met four times with Taveras in the following weeks. According to Taveras, Pollock gave her positive feedback on her stores during several of these meetings,[3] Tavares Dep. (Dkt # 22-1) at 85:3-6, 86:10-15; Tavares Aff. (Dkt

---

[1] She first served as the General Manager of a Saugus, Massachusetts store. In 2010, however, the franchise reassigned her to serve as the General Manager of a new store opening in Lawrence, Massachusetts.

[2] Taveras indicates that she at first supervised only four stores, but that Northeast Foods soon increased her portfolio to seven stores in total.

[3] Northeast Foods asserts that Pollock brought up complaints other employees had made against Taveras during these meetings and that Taveras

# 28-3) ¶ 16, but criticized her accent, at one point asking, "Oh, are you thinking in Spanish now?" Tavares Dep. at 86:16-87:6; Tavares Aff. ¶¶ 13, 16. Although she felt "surprised and hurt" by the query, Tavares Aff. ¶ 16, Tavares did not ask what Pollock meant to imply because she "didn't want to cause any trouble with him." Tavares Dep. at 87:5-6. She did, however, repeat the mocking comment to two other Hispanic District Managers, both of whom found it offensive.

On October 2, 2017, Pollock spoke with his supervisor, Mevis Leo, about "performance issues"[4] he had with Taveras. Leo Aff. ¶ 16. He said that he "wanted to talk to . . . Taveras about moving back to her former position" as General Manager of the Lawrence store. *Id.* ¶ 18. Leo gave him approval to discuss the perceived performance issues with Taveras, but she also allegedly "instructed . . . Pollock that Northeast Foods would not move

---

told Pollock that she felt "overwhelmed" by her responsibilities. Leo Aff. (Dkt # 21) ¶ 14; *see also* Attach. B to Leo. Aff. (Dkt # 21-2). Taveras disputes this account, and the court must credit her testimony on a motion for summary judgment.

[4] According to Leo, these performance issues included, *inter alia*, "complaints that restaurant staff were missing pay for hours worked and that . . . Taveras had declined or failed to correct the issue." Leo Aff. ¶ 16. Taveras, however, testified that Pollock explicitly instructed her not to address the payroll issue because he planned to handle it and ordered her to stay away from the store where the complaints had originated. Taveras Aff. ¶¶ 14-15; Taveras Dep. at 97:7-14, 106:12-107:24.

forward with any demotion at that time."[5]  *Id.* ¶ 19; *see also* Attach. C to Leo Aff. (Dkt # 21-3).  Pollock, however, later testified that he had "made the decision [to demote Taveras] in consultation with [Leo]."  Ex. C to Attach. 5 of McGuire Aff. (Dkt # 28-2 at 25).  And Taveras offers other circumstantial evidence that Leo either consented to the demotion or, at the very least, subsequently ratified Pollock's decision.  *See, e.g.*, Taveras Dep. at 113:4-7 (testifying that, immediately following her conversation with Pollock, Leo told her that demotion to General Manager of the Lawrence location was her "only choice"); 113:16-19 (same); 114:11-15 (same), 115:14-116:1 (same); *see also* Aquino Aff. (Dkt # 28-4) ¶ 17 (stating that Leo approached him (Taveras's husband) at the Burger King he managed and "laughing[ly]" told him to tell Taveras "to take the Lawrence store"); Taveras Aff. ¶ 33 ("My husband told me that . . . Leo had spoken to him regarding me coming back to work as the Lawrence General Manager.").

    In any event, two days after consulting Leo, Pollock met Taveras at one of her locations in New Hampshire.  He expressed concerns about how Taveras interacted with her employees – although he refused, when pressed, to disclose specific details of any complaint against Taveras – and repeated

---

[5] The parties agree that Pollock did not have the authority to demote Taveras without Leo's approval (and the approval of her supervisor).

4

his difficulty "understand[ing]" her.  Taveras Dep. at 92:24-25; *see also id.* at 93:8-12; Attach. A to Sakhel Aff. (Dkt # 20-1).  Pollock then told Taveras that he was demoting her back to a position as General Manager of the Lawrence store (with a corresponding salary reduction).  During the exchange, Pollock "led [Taveras] to believe that he had" received management approval for the decision.[6]  Taveras Aff. ¶ 20.  Taveras left in a state of distress and later sent Pollock a text message resigning from Northeast Foods.

A day later, Taveras spoke with Leo about her resignation.  She placed Leo on a speakerphone so that her husband, Henry Aquino, who also worked for Northeast Foods at the time, could listen to the conversation.  According to Taveras and her husband, although Taveras reported Pollock's "thinking in Spanish" comment to Leo during the call, Leo maintained that the demotion to General Manager of the Lawrence store was Taveras's "only choice."  Taveras Dep. at 112:22-113:7; *see also id.* at 114:4-115:7; Aquino Aff. ¶¶ 10-11.  Taveras replied that she would rather resign than be demoted.

---

[6] Contrary to Northeast Foods's assertion, that Pollock stated that he had made the decision without further specifying that he had first received approval from management does not, in and of itself, negate any inference that he acted with management approval.

5

On October 11, 2017, Taveras emailed Human Resources at Northeast Foods seeking a written explanation of the reason for her demotion that she could use in applying for unemployment benefits. Pascal Sakhel, a Northeast Foods Vice-President, attempted to call her – allegedly because he wanted to "return[]" Taveras "to her position as District Manager," Def.'s Statement of Material Facts (SOF) (Dkt # 19) ¶ 50 – but Taveras remained "too upset" to speak with him and did not return his call, Taveras Dep. at 121:1.

On June 29, 2018, Taveras filed a charge of discrimination with the Massachusetts Commission Against Discrimination (MCAD). A year later, she filed this action in the Massachusetts Superior Court, asserting claims of race and national origin discrimination in violation of state law. Northeast Foods removed the case to the federal district court on August 21, 2019. Following the completion of discovery – and Taveras's rejection of Northeast Food's unconditional offer of reinstatement with a $5,000 raise[7] (which she turned down because she "ha[d] been traumatized by Northeast Foods's decision to urge [her] to accept demotion" and had begun working elsewhere,

---

[7] Because Northeast Foods refers to this offer in its Statement of Material Facts, *see* SOF ¶ 57, and attached a copy of the offer itself to Sakhel's Affidavit, the court presumes that it has no objection to the admissibility of this evidence under Fed. R. Evid. 408.

Taveras Aff. ¶ 44) – Northeast Foods moved for summary judgment on both claims.

## DISCUSSION

Summary judgment is appropriate when, based upon the pleadings, affidavits, and depositions, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990). "'[T]he mere existence of a scintilla of evidence' is insufficient to defeat a properly supported motion for summary judgment." *Torres v. E.I. Dupont De Nemours & Co.*, 219 F.3d 13, 18 (1st Cir. 2000), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### A. Choice of Law

Northeast Foods objects to the use of Massachusetts substantive law in the deciding of Taveras's claims. Following Massachusetts choice-of-law rules,[8] the court finds the application of Massachusetts law "reasonable" under the circumstances. *See Dow v. Casale*, 83 Mass. App. Ct. 751, 756-757

---

[8] The parties appear to agree that Massachusetts choice-of-law rules control, as they cite only to Massachusetts case law.

(2013) (noting that the "overarching limiting principle" of the choice-of-law analysis "is that '[a] court may not apply the local law of its own [S]tate to determine a particular issue unless such application of this law would be reasonable in the light of the relationship of the [S]tate and of other [S]tates to the person, thing or occurrence involved'") (alterations in original), quoting Restatement (Second) Conflict of Laws § 9 (1971).  Taveras is a resident of Massachusetts, began her employment with Northeast Foods in Massachusetts, continued to oversee a Burger King store within Massachusetts even in her most recent role with the company, and ultimately faced the prospect of a demotion back to a Burger King store in Massachusetts.  Massachusetts has at least as strong an interest in a cause of action brought by one of its own citizens as would any other forum.

### B. Discrimination Claims

Turning to the merits of the discrimination claims – which the court will analyze in tandem because they are premised on the same factual core (Pollock's criticisms of Taveras's accent and his attempt to demote Taveras on that basis) – the parties dispute whether Taveras has presented direct or circumstantial evidence of discrimination.  *See Patten v. Wal-Mart Stores E., Inc.*, 300 F.3d 21, 24-25 (1st Cir. 2002) (noting that a plaintiff may establish discrimination either through circumstantial or direct evidence).

Northeast Foods contends that Taveras relies on circumstantial evidence such that the court should apply the burden-shifting paradigm set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Taveras argues that Pollock's alleged statement that he planned to demote her at least in part because he could not understand her, *see* Tavares Dep. at 92:22-93:12, 103:19-104:7; *see also id.* at 86:16-87:6, constitutes direct evidence of racial and national origin discrimination such that the court should bypass the *McDonnell Douglas* paradigm in favor of a "mixed-motive analysis," *Patten*, 300 F.3d at 25.

    The court is persuaded that Pollock's demeaning statements constitute direct evidence of discrimination. His criticisms of Taveras's Spanish accent "directly reflect[ed]" animus against Taveras because of her Hispanic heritage and Dominican origins, and his attribution of her demotion in part to her accent (and attendant "communication issues") tied this animus "squarely [to] the contested employment decision." *Febres v. Challenger Caribbean Corp.*, 214 F.3d 57, 60 (1st Cir. 2000).

    In reaching this conclusion, the court recognizes that direct evidence of discrimination is "relatively rare" and that "mere background noise" or "stray remarks" generally fall short of the mark. *Patten*, 300 F.3d at 25 (internal citations and quotation marks omitted). Pollock's dismissive and

9

demeaning statements, however, amount to more than background chatter. They bear directly on the decision to demote Taveras and give the court "a 'high degree of assurance' that [her] termination was attributable to discrimination." *Id.*, quoting *Fernandes v. Costa Bros. Masonry, Inc.*, 199 F.3d 572, 580 (1st Cir. 1999).

Because Taveras has adduced direct evidence of discrimination, the court will apply a mixed-motive analysis under which Taveras "need prove only that the discriminatory action was *a motivating factor* in an adverse employment decision.'" *Id.* (emphasis in original). Taveras easily meets that burden. Pollock expressly purported to premise her demotion on, *inter alia*, his difficulties understanding her accent. The court accordingly will deny Northeast Foods's motion for summary judgment.[9] *See Massacani v. Kelly Servs., Inc.*, 2018 WL 443448, at *5 (D. Mass. Jan. 16, 2018) (noting that the presence of direct evidence generally "is sufficient to generate a jury issue on the question of a possibly improper mixed-motive on Defendant's part").

---

[9] Northeast Foods can, of course, rebut Taveras's evidence by demonstrating that it "would have taken the same action in the absence of the impermissible motivating factor." *Patten*, 300 F.3d at 25 (internal quotation marks and citations omitted). Northeast Foods, however, relies solely on Taveras's alleged inadequate performance to establish that it would have taken the same action, while Taveras provides counterevidence disputing the veracity of any performance issues. This dispute of material facts precludes any brevis disposition on summary judgment.

Even if the court were to construe Taveras's evidence as purely circumstantial, it would nonetheless find that her claims withstand summary judgment. Northeast Foods challenges Taveras's ability under *McDonnell Douglas*[10] to establish the three elements of a prima facie discrimination case – that Taveras performed her job "at an acceptable level," that she experienced an adverse employment action, and that Northeast Foods replaced her with "another individual with" similar qualifications. *See Blare*, 419 Mass. at 441. The court cannot say on this record that a reasonable jury could not reach the opposite conclusion. First, with respect to her job performance, Taveras presents evidence that she consistently met her employer's expectations and was never disciplined during the 13 years she worked at various Burger King franchises (including the year in which she

---

[10] Under the *McDonnell Douglas* paradigm, a plaintiff bears the initial burden "to show by a preponderance of the evidence a prima facie case of discrimination" or retaliation. *Blare v. Husky Injection Molding Sys. Bos., Inc.*, 419 Mass. 437, 441 (1995). If the plaintiff makes the requisite showing, the burden shifts to the employer to "rebut the presumption created by the prima facie case by articulating a legitimate, nondiscriminatory reason for its [employment] decision." *Id.* If the defendant proffers a legitimate, nondiscriminatory reason for its action, "the burden of production shifts back to the plaintiff employee, requiring the employee to provide evidence that 'the employer's articulated justification [for the termination] is not true but a pretext.'" *Bulwer v. Mount Auburn Hosp.*, 473 Mass. 672, 681 (2016) (footnote omitted) (alteration in original), quoting *Blare*, 419 Mass. at 443.

served as District Manager prior to Pollock becoming her supervisor).[11] And while Northeast Foods suggests that she began to perform poorly by at least September of 2017, a reasonable jury could find otherwise.  For example, a reasonable juror could doubt the existence of any coworker complaints given Pollock's refusal to provide Taveras with any particulars of these complaints and the absence of any contemporaneous documentation of them.  In a similar vein, a reasonable juror could doubt whether Northeast Foods had any legitimate basis for holding Taveras accountable for the payroll issue reported at one of her store locations, *see supra* note 4, given her testimony that Pollock had expressly instructed her not to address the issue.

Second, with respect to the existence of an adverse employment action, although Northeast Foods disputes having demoted Taveras – it notes that Pollock lacked the authority to unilaterally take any employment action against her – there is enough circumstantial evidence in the record for a reasonable juror to infer that Pollock acted with management approval such that his attempt to demote Taveras is imputable to Northeast Foods.[12]

---

[11] Taveras offers evidence that she was promoted several times during her career and had her store count increased from four stores to seven stores while serving as District Manager.  A reasonable juror could infer adequate performance on her part from this evidence alone.

[12] The court notes that the portions of Taveras's opposition asserting constructive discharge and creation of a hostile work environment occur in pages past the twenty-page limit provided for by Local Rule 7.1(b)(4) and

Pollock, for instance, explicitly stated that he had "made the decision [to demote Taveras] in consultation with [Leo]," Ex. C to Attach. 5 of McGuire Aff., while Taveras testified that, when she spoke on the phone with Leo following her meeting with Pollock, Leo told her that demotion to General Manager of the Lawrence location was her "only choice." Taveras Dep. at 113:4-7.

Northeast Foods argues that, given Taveras's immediate resignation, any demotion (adverse employment action) never actually took effect. *See* Def.'s Mem. (Dkt # 18) at 11 ("Ms. Taveras did not experience any actual or tangible change in her job duties, job title, pay, or benefits as a result of her meeting with Mr. Pollock on October 4, 2017. Instead, Ms. Taveras resigned her employment with Northeast Foods.") (citations omitted). The court declines at this juncture (especially given the featherweight burden imposed on a plaintiff in establishing a prima facie case) to differentiate between the imminent threat of demotion, avoided only by means of resignation, and the actual act of demotion.

---

that Taveras never sought permission from the court to exceed the twenty-page limit. Even if the court were to consider her arguments on the merits, however, it concludes that Taveras has not adduced sufficient evidence to establish the existence of any constructive discharge or hostile work environment.

13

Third, as to a replacement, the record contains enough evidence for a reasonable jury to conclude that Taveras's position was taken by someone of similar qualifications. Her stores were reassigned to two other District Managers. And while these District Managers are, like Taveras, Hispanic, it is not clear that they are "similarly situated" employees such that their assumption of her duties would indicate the absence of disparate treatment. *See* Def.'s Mem. at 14. The parties do not indicate the national origin of these District Managers, nor is there evidence as to how Pollock judged their accents (if any).

Northeast Foods argues that, even assuming Taveras can establish a prima facie discrimination case, Taveras cannot demonstrate that its purported rationale for demoting her – her alleged inadequate performance – was a pretext.[13] But as noted above, Taveras offers evidence contradicting the allegations of inadequate performance. She testified that Pollock refused to provide her with any details of the complaints against her; pointed to the lack of any corroborating documentation of these complaints; and testified that she only failed to resolve the payroll issue because Pollock had

---

[13] Taveras need not demonstrate that the pretext specifically concealed discriminatory animus for her Chapter 151B claims to survive summary judgment. *See Blare*, 419 Mass. at 443 (noting that "Massachusetts is a pretext only jurisdiction").

14

instructed her to leave it to him.  A reasonable juror crediting her testimony could determine that she had established the existence of pretext.

## ORDER

For the foregoing reasons, the motion for summary judgment is <u>DENIED</u>.  Counts I and II survive this motion.  Given the constraints imposed by the present pandemic, the Clerk will inquire of the parties whether they are mutually willing to proceed to trial without a jury and schedule the case accordingly.

SO ORDERED.

/s/Richard G. Stearns<u>   </u>
UNITED STATES DISTRICT JUDGE